IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD RAY,

    Petitioner,                    No. 2: 09-cv-0644 MCE KJN P

    vs.

D. K. SISTO, et al.,

    Respondents.             FINDINGS AND RECOMMENDATIONS

                                    /

I. Introduction

        Petitioner is a state prisoner proceeding without counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2007 conviction for false imprisonment with force and violence (Cal. Penal Code §§ 236, 237(a)), assault by means of force likely to produce great bodily injury and assault with a deadly weapon (Cal. Penal Code § 245(a)(1)), and infliction of corporal injury on a spouse or cohabitant (Cal. Penal Code § 273.5(a)). Petitioner is serving a sentence of 25 years to life.

        This action is proceeding on the original petition filed March 9, 2009. Petitioner raises the following claims: 1) jury instruction error; 2) the trial court erred by failing to notify defense counsel prior to responding to requests by the jury; 3) the trial court failed to adequately respond to a jury inquiry.

After carefully considering the record, the undersigned recommends that the petition be denied.

II. <u>Anti-Terrorism and Effective Death Penalty Act ("AEDPA")</u>

In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. <u>Id</u>. at 405. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law; or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. <u>Id</u>. at 407-08. It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law. . . .[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 410-11 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. <u>Woodford v. Viscotti</u>, 537 U.S. 19 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. <u>Wright v. Van Patten</u>, 552 U.S. 120 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. <u>See</u> e.g., <u>Carey v.

2

Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority, in arriving at their decision. Early v. Packer, 537 U.S. 3 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The California Court of Appeal was the last state court to issue a reasoned decision addressing petitioner's claims. (Respondent's Lodged Documents D, E.) Accordingly, the undersigned considers whether the denial of petitioner's claims by the California Court of Appeal was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision.)

III. Factual Background

The opinion of the California Court of Appeal contains a factual summary. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it herein.

> Defendant and Donna Ray were together for seven years and married for four of those years. On July 24, 2006, they were living in room 268 at the Granada Inn in West Sacramento, Yolo County, California. Around 11:00 a.m., Donna went to the convenience store across the street to buy a 12-pack of beer for defendant. FN2 Donna stayed in the room about an hour before leaving again to go to the supermarket. During that time, defendant had one or two of the beers.
>
> > FN2. We refer to Donna Ray by her first name to avoid confusion. No disrespect is intended.
>
> Donna took a bus to the supermarket. The couple did not have a car. She returned from the supermarket around 2:00 p.m. She noticed the 12-pack of beer had been consumed, and defendant appeared intoxicated. Defendant was angry because he thought she had left with another man. He started yelling at her, then began hitting her. He hit her face, head, and arms with his fists. He grabbed her hair and tossed her around the room. When she fell to the ground, he kicked her. She cried, but did not scream, because she was afraid he would hurt her even worse if she did.
>
> Defendant told Donna that if she ever tried to leave, he would kill her. She thought this meant he would kill her if she left the room and kill her if she left "the marriage." "[H]e kept telling me that [if] I left with another man ... he would kill me." At one point, Donna testified defendant put a knife to her throat, and told her he would kill her. She did not try to leave "[b]ecause I was afraid if I tried to leave or call the police, he would kill me."
>
> The beating continued, on and off, throughout the night. The next morning, sometime between 8:00 and 10:00, Donna told defendant she was going to check the mail at their post office box in Fair Oaks, and left. Donna went to the post office first, then to the hospital because she was having trouble walking. The hospital staff contacted the police around 4:00 p.m. The police contacted her at the hospital, and she told them what had happened.
>
> Donna had bruises around her eye, on her neck, under her chest, on her left thigh, on her hands, shoulder, arms, and all over her back. She had swelling on her head, and a cut on her ear. Officers went to defendant's motel room, and arrested him.

(Respondent's Lodged Document D, Appendix A, at 2-4.)

IV. <u>Discussion</u>

  A. <u>Claim 1 – Alleged Jury Instruction Error</u>

  *Legal Standard*

  A challenge to jury instructions does not generally state a federal constitutional claim. See <u>Gutierrez v. Griggs</u>, 695 F.2d 1195, 1197 (9th Cir. 1983); <u>see also Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985). Habeas corpus relief is unavailable for alleged error in the interpretation or application of state law. <u>Estelle v. McGuire</u>, 502 U.S. 62 (1981); <u>see also Lincoln v. Sunn</u>, 807 F.2d 805, 814 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986). The standard of review for a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States (citations omitted)." <u>Estelle v. McGuire</u>, 502 U.S. at 68. In order for error in the state trial proceedings to reach the level of a due process violation, the error had to be one involving "fundamental fairness." <u>Id</u>. at 73. The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. <u>Id</u>.

  When what is at issue is the failure to give an instruction, petitioner's burden is "especially heavy" because it has been held that "[a]n omission or an incomplete instruction is less likely to be prejudicial than a misstatement of the law." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977). Moreover, a trial judge need not instruct on a defense which would be inconsistent with petitioner's theory of the case. <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9th Cir. 1984). Failure to give a jury instruction under these circumstances will not amount to a due process violation. <u>Id</u>.

  The burden upon petitioner is greater yet in a situation where he claims that the trial court did not give an instruction sua sponte. To the extent that petitioner rests his claim on a duty to give an instruction sua sponte under rules of state law, petitioner has stated no federal claim. Indeed, in the failure to give a lesser included offense instruction context, the Ninth

Circuit has held in non-capital cases that the failure to give the instruction states no federal claim whatsoever. James v. Reece, 546 F.2d 325, 327 (9th Cir. 1976). Therefore, in order to violate due process, the impact on the proceeding from failure to give an instruction sua sponte must be of a very substantial magnitude.

Furthermore, the Supreme Court has held that there is no unreasonable application of federal law where a state appellate court decided that a jury instruction's single incorrect statement of the "imperfect self-defense" standard did not render the instruction reasonably likely to have misled the jury. Middleton v. McNeil, 541 U.S. 433 (2004).

*Analysis*

Petitioner argues that the trial court failed to sua sponte give a limiting instruction regarding evidence of his uncharged offenses. In the direct appeal filed in the California Court of Appeal, petitioner also argued that the trial court erred by admitting this evidence. The discussion of this claim by the California Court of Appeal is related to the instant jury instruction claim:

> Evidence of Prior Acts
>
> The prosecutor asked to approach the bench during her examination of Donna, and an unreported discussion took place. Thereafter, the prosecutor asked whether defendant had beaten Donna before, and Donna replied that he had done so once before. Defense counsel interjected, "Just for the record, I would object because I have no notice of what this entire thing is about." The court responded, "Okay." The prosecutor continued, by asking Donna whether any other instances or reasons made her afraid of defendant. Donna responded that defendant had a criminal background, and that some of that background was violent. When the prosecutor asked Donna if she were aware of this background at the time of the attack, defense counsel objected, citing Evidence Code sections "352 [and] 1101." The trial court overruled the objection, stating, "It is one of the elements." Donna testified that knowing defendant had a violent background made her fearful for her life.
>
> Defendant argues the evidence of his prior bad acts was improperly admitted. We disagree.
>
> Evidence Code section 1101 provides that evidence of a person's

character or of a character trait, including specific instances of conduct, is inadmissible to prove his or her conduct on a particular occasion. FN3.  Such evidence may be admitted, however, if it is relevant to prove some fact "other than his or her disposition to commit such an act." ( Evid. Code, § 1101, subd. (b).) Some examples of facts on which such evidence is admissible are, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented ...." (Ibid.)

> FN3. Evidence Code section 1109, subdivision (a)(1) provides that section 1101 does not make evidence of a defendant's commission of other domestic violence inadmissible where the defendant is accused of domestic violence. Any evidence offered under Evidence Code section 1109 must be disclosed to the defendant. (Id. at subd. (b).) No disclosure pursuant to the statute took place here. However, it does not appear that the evidence was admitted for the purpose of proving defendant's disposition to commit the crime, but was instead admitted under an exception to section 1101 to prove some other fact. Thus, we need not consider whether the trial court erred in admitting the evidence pursuant to Evidence Code section 1109.

In the case before us, it is undisputed that Donna was beaten severely. There was medical testimony regarding her injuries, and the jury was shown pictures taken at the hospital. The theory of the defense was that someone else caused the injuries, most likely between the several hours that lapsed between the time she went to the bus between 8:00 and 10:00 a.m. the morning after the attack, and 4:00 p.m. when the hospital notified the authorities of the beating. Thus, the identity of the attacker was a material issue. Defense counsel argued to the jury that it was unlikely defendant had attacked Donna in their motel room because "there weren't any police calls, nobody called about it, and the manager of the Granada Inn said she didn't get any complaints."

The evidence of defendant's prior domestic violence and the evidence of his prior violent crimes were both relevant to explain Donna's failure to scream or call for help during the attack. The prosecution necessarily had to answer a predictable question in the mind of the jurors: if defendant beat Donna over a period of time when they were in the motel room, why did Donna not scream for help, or try to run away, or call the police? The prosecutor attempted to show by the evidence of defendant's prior violent acts and Donna's knowledge of such acts, that she was too afraid of him to scream or call for help.

Additionally, the prior instances of domestic abuse were relevant to the disputed issue of identity. When a defendant is charged with a violent crime, prior assaults against the same victim are admissible based solely upon the consideration of identical perpetrator and victim, where the evidence is offered on disputed issues such as identity, intent, or motive. (People v. McCray (1997) 58 Cal.App.4th 159, 172; People v. Zack (1986) 184 Cal.App.3d 409, 415.) Evidence of prior quarrels between the same parties is relevant on the issue whether the accused committed the charged acts. (Rufo v. Simpson (2001) 86 Cal.App.4th 573, 585.)

Thus, prior acts of violence against Donna were relevant to the issue of identity, and under these circumstances, Donna's knowledge of defendant's prior convictions for violent offenses were relevant because they explained why Donna was too afraid to get help during the attack.

Defendant argues the evidence of his past domestic violence and past convictions should have been excluded because the probative value of the evidence was substantially outweighed by the probability that its admission would result in undue prejudice. Undue prejudice is not evidence that tends to prove guilt, but evidence that prompts an emotional reaction against the defendant, causing the jury to decide the case on an improper basis. (People v. Walker (2006) 139 Cal.App.4th 782, 806.)

The principal factor affecting the probative value of the evidence is the tendency of the evidence to demonstrate the existence of the fact for which it is admitted. (People v. Walker, supra, 139 Cal.App.4th at p. 806.) In this case, the evidence was admitted to explain why Donna did not scream when defendant was beating her, or call for help when she had the opportunity, and to show defendant was the perpetrator of the attacks. Evidence of his past abuse and her knowledge of his violent past, coupled with his threats to kill her if she tried to leave, were highly relevant to show that her fear of him made her react in a manner the jury may have found otherwise unusual.

The principal factors affecting the prejudicial effect of uncharged acts are whether the uncharged acts resulted in convictions (motivating the jury to punish defendant for past acts) and whether the evidence is more inflammatory than the present offense. (People v. Walker, supra, 139 Cal.App.4th at p. 806.) In this case, Donna admitted she refused to have defendant arrested for the prior domestic abuse. However, the fact that she referenced his "priors" and his "criminal background" indicates he had convictions unrelated to the domestic abuse. Because no details were given about the prior incidents, other than that they were violent, the evidence was not more inflammatory than the present offense. The trial court did not abuse its discretion in admitting the evidence.

(Respondent's Lodged Document D, Appendix A, at 4-8.)

The California Court of Appeal denied petitioner's related jury instruction claim for the reasons stated herein:

> Defendant argues the trial court erred in not giving, sua sponte, CALCRIM No. 375, that the evidence of defendant's past conduct could not be used to show he has a bad character or was disposed to commit the instant crime. However, "in general, the trial court is under no duty to instruct sua sponte on the limited admissibility of evidence of past criminal conduct." (People v. Collie (1981) 30 Cal.3d 43, 64, fn. omitted.) The exception to this rule is the "occasional extraordinary case in which unprotested evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose." (Ibid.) This case does not fall within the exception. The evidence of past conduct was a small part of the evidence against defendant, was not unduly prejudicial, and was substantially relevant to material issues.

(Respondent's Lodged Document D, Appendix A, at 8-9.)

Petitioner has failed to demonstrate that the lack of a limiting instruction was an error of fundamental fairness. As noted by the California Court of Appeal, evidence of petitioner's past conduct was relevant to material issues and not unduly prejudicial.

Moreover, there is no clearly established federal law holding that the use of evidence to show criminal propensity violates the Constitution. The U.S. Supreme Court has reserved the issue, and the Ninth Circuit has consequently and squarely held that no clearly established federal law exists on the issue. Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."); Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that "admission of the propensity evidence was not contrary to clearly established law").

Accordingly, for the reasons discussed above, the trial court's failure to sua sponte give the limiting instruction did not violate petitioner's constitutional rights. After conducting an AEDPA review, the undersigned recommends that claim one be denied.

B.  Claim Two – Communication with the Jury

Petitioner argues that the trial court erred by failing to notify defense counsel of two written requests from the jury. The background to this claim is as follows.

On March 26, 2007 during deliberations, the jury sent a note to the court stating, "What does abiding conviction mean (220 pg 4)?" (CT, at 183.) The next day, the jury sent another note to the court stating, "Jury requests testimony from Nurse Foreman ...Testimony of Officer Burraro." (CT, at 188.) A short time later, the jury sent a note to the court stating that it had reached a verdict. (CT, at 189.)

After the jury's verdicts were read and the jury dismissed, the court informed the parties regarding the jury's notes:

> For Counsel's benefit, the first note the Court received just as the jury was getting ready to leave yesterday, and it reads, "What does abiding conviction mean (220, page 4)?"
>
> I assume from that they were asking for a definition of abiding conviction in the reasonable doubt instruction. I just typed – what I typed and gave to them in the jury room, but, in essence, what I told them was the definition is within the instruction 220. That's all I can tell you, but if you would like a copy of it, or the specific language, I did type it out so that is a matter of record.
>
> Then I received a note this morning saying, quote, Jury requests testimony from Nurse Freeman, signed by the foreperson, and then a line under that, and then some more writing that says testimony of Officer Barreiro, again signed by the foreperson. And the court reporter did go in, and I assume she read those to them.

(RT, at 340-41.)

The California Court of Appeal denied this claim for the reasons stated herein:

> Defendant argues he is entitled to assistance of counsel at all critical stages of the proceedings, including jury deliberations, and that the trial court's communication with the jury without notifying him violated his constitutional and statutory right to counsel. FN5
>
> > FN5. He also claims the trial court violated his right to counsel when he instructed the reporter to read back testimony without notifying counsel. We reject this claim as waived because the parties stipulated

10

to this prior to deliberations.

Section 1138 provides that after the jurors begin deliberation, they must be conducted into court if they have a disagreement as to the testimony, or if they desire to be informed on any point of law arising in the case. When they are brought into court, the information must be given to them after notice to and in the presence of the prosecuting attorney and the defendant or his counsel.

The trial court failed to comply with these requirements of section 1138, and such failure was error. However, we conclude the defendant tacitly approved of the trial court's action, and the error was not prejudicial.

The trial court informed both counsel of the ex parte communications with the jury after the jury rendered its verdict, but prior to sentencing. Defense counsel did not object or move for a mistrial upon notification of the ex parte communications. Such failure may be construed as a tacit approval, and approval of the trial court's actions cures any possible error. (People v. House (1970) 12 Cal.App.3d 756, 765-766, disapproved on another point in People v. Beagle (1972) 6 Cal.3d 441, 451-452.)

In any event, there was no prejudice. "The standard of review in assessing the impact of an improper communication between the court and a deliberating jury is not clear." (People v. Hawthorne (1992) 4 Cal.4th 43, 68, fn. 14.) Here, there was no prejudice even under the standard set forth in Chapman v. California (1967) 386 U.S. 18, 24, because the error was harmless beyond a reasonable doubt. The error was harmless because the instruction, and the "abiding conviction" language in particular, was correct, because the court was not required to give any further instruction, and because defendant has not shown what further instruction would have resulted in a different verdict.

The reasonable doubt instruction, and the abiding conviction language, was correct and adequate. The Supreme Court has rejected a challenge to the "abiding conviction" language used in CALJIC No. 2.90, the predecessor to CALCRIM No. 220. (People v. Cook (2006) 39 Cal.4th 566, 601; People v. Garelick (2008) 161 Cal.App.4th 1107, 1119.) Moreover, the United States Supreme Court gave the language its approval in Victor v. Nebraska (1994) 511 U.S. 1, 14-15, where it stated, "[a]n instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof." The Supreme Court further explained, " '[t]he word "abiding" here has the signification of settled and fixed, a conviction which may follow a careful examination and comparison of the whole evidence'...." (Id. at p. 15, quoting Hopt v. Utah (1887) 120 U.S.

11

430, 439.)

This sense of a "conviction" that follows from a "careful examination and comparison of the whole evidence" is precisely the definition found in CALCRIM No. 220, which instructs the jury that they must "compare and consider all of the evidence that was received throughout the entire trial." The trial court was entirely correct in referring the jury to the language of the instruction.

The reasonable doubt instruction given is taken from the language found in section 1096, which states: "Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.' " Section 1096a states that the court may read section 1096 to the jury, "and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

"The court has a primary duty to help the jury understand the legal principles it is asked to apply. [Citation.] This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information. [Citation.] Indeed, comments diverging from the standard are often risky." (People v. Beardslee (1991) 53 Cal.3d 68, 97.) The trial court acted within its discretion in referring the jury back to the language of the instruction.

Defendant's real complaint is that neither he nor his attorney were present to suggest some further instruction for the trial court to give. However, defendant does not propose any further instruction that he contends would have improved on the standard instruction. The fact that the trial court referred the jury to the instruction to define the challenged term without notifying counsel or the defendant indicates that the court was unwilling to deviate from the language of the standard instruction, and that the court's response to the question would have been the same whether or not counsel had been present. Since the instruction given was correct and the trial court acted within its discretion in referring the jury to the standard instruction, there is no reasonable possibility that the failure to notify counsel contributed to the conviction.

(Respondent's Lodged Document D, Appendix A, at 10-14.)

A trial is unfair if the accused is denied counsel at a critical stage of his trial.

1  United States v. Cronic, 466 U.S. 648, 659 (1984).  Automatic reversal is required where a
2  defendant is denied counsel at a "critical stage."  Cronic, 466 U.S. at 658-59.

3          In Musladin v. Lamarque, 555 F.3d 830, 842-43 (9th Cir. 2009), the Ninth Circuit
4  found that the state court was not unreasonable in finding that mid-deliberations communication
5  to the jury that did no more than refer the jury back to the original instruction was not a "critical
6  stage" under Cronic.  In Musladin, the Ninth Circuit went to state that because the state court's
7  decision not to apply Cronic was not objectively unreasonable, it could grant the petition only if
8  the denial of counsel was prejudicial.  555 F.3d at 843.  "Specifically, we determine whether the
9  denial of counsel 'had a substantial and injurious effect or influence in determining the jury's
10  verdict.'"  Id., quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal citations
11  omitted).

12          As to the jury's question regarding the jury instruction, the facts of the instant case
13  are virtually identical to those of Musladin in that in both cases the trial court referred the jury
14  back to the original jury instruction.[1]  Pursuant to Musladin, the implicit finding by the California
15  Court of Appeal in petitioner's case that this was not a "critical stage" of the proceedings was not
16  unreasonable.  Accordingly, the undersigned must consider whether the denial of counsel at that
17  stage of the proceeding was prejudicial.

18          As noted by the California Court of Appeal, petitioner does not suggest any
19  further instruction that would have improved on the standard instruction.  For this reason, and
20  because the original instruction given was correct and did not require clarification, as will be
21  discussed infra, the denial of counsel did not have a substantial and injurious effect or influence
22  in determining the jury's verdict.

23          Regarding the read back of testimony, the Supreme Court has not held that read
24  back of testimony is a critical stage.  LaCrosse v. Kernan, 244 F.3d 702, 708 (9th Cir. 2001).  In

---

[1] The undersigned cannot locate in the record the trial court's typed note to the jury referring it back to the original instruction.

13

Fisher v. Roe, the Ninth Circuit limited its holding in LaCrosse to situations where defense counsel knew about the readback and stipulated to defendant's absence. Fisher v. Roe, 263 F.3d 906, 916-17 (9th Cir. 2001).

In the instant case, as noted by the California Court of Appeal, through counsel petitioner waived his right to be present at any read back of testimony. (RT, at 328.) Moreover, petitioner has failed to establish any prejudice as a result of his or counsel's absence from the read back of the testimony. For these reasons, petitioner is not entitled to habeas relief as to this claim.

After conducting an AEDPA review, the undersigned recommends that claim two be denied.

### C. Claim Three - Response to Jury Inquiry

In claim three, petitioner argues that the trial court should not have merely referred the jury to the original instruction when responding to its question regarding the meaning of abiding conviction. Petitioner contends that the trial court should have provided a clarifying instruction.

In Victor v. Nebraska, 511 U.S. 1 (1994), the Supreme Court held that, as long as the trial court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. See Victor, 511 U.S. at 5. In Lisenbee v. Henry, 166 F.3d 997, 998-99 (9th Cir. 1999), the Ninth Circuit upheld the giving of a revised CALJIC 2.90 in the face of a claim that it violated the Due Process Clause of the Fourteenth Amendment by impermissibly shifting the prosecution's burden of proof. The Ninth Circuit rejected the claim that the trial court's use of the phrase "abiding conviction" did not adequately define the degree of doubt required for acquittal. See Lisenbee, 166 F.3d at 999 (citing Victor, 511 U.S. at 14). The United States Supreme Court has approved the use of the term "abiding conviction" without any qualifying term. Victor v. Nebraska, 511 U.S. at 7-17.

In the instant case, the jury was properly instructed with CALJIC 2.90.  (CT, at 155.)  Accordingly, petitioner's claim that the trial court erred by failing to provide an instruction clarifying "abiding conviction" is without merit.

After conducting an AEDPA review, the undersigned recommends that claim three be denied.

V. Conclusion

For all of the above reasons, the undersigned recommends that petitioner's application for a writ of habeas corpus be denied.  If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 22, 2010

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

ray644.157